Defendants urge the Commission to "average" the 30% permanent partial impairment rating by Dr. Crosby with the 0% rating by Dr. Pekman. When two or more physicians with appropriate expertise and sufficient opportunity to evaluate a claimant offer credible and consistent opinions on the nature of an impairment, and differ slightly in their judgment of the degree of impairment, the Commission typically averages the ratings. This practice is not only consistent with the weight of the evidence, but the predictability of the outcome tends to encourage quick settlement and payment of claims, without litigation. However, to mechanically average in every rating either party could produce, without first evaluating its probative value, would encourage disingenuous medical opinions and impose superfluous medical costs on employers, and sometimes claimants. See N.C.G.S. § 97-27(b). (Another jurisdiction corrected the tendency of parties to produce radical medical ratings by requiring the compensation judge to select and be bound precisely by one or the other.) Here, the Deputy Commissioner correctly determined that the divergence of opinions required that he choose the more credible one. The 0% rating was offered by a physician who disregarded universally perceived symptoms because of what he believed were inconsistent test results, and even questioned whether the stipulated injury occurred.
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
The following were entered into by the parties at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer.
3. Plaintiff's average weekly wage as set forth on the Form 22 Wage Chart is $246.26, which yields a compensation rate of $164.17 per week.
4. The defendant-employer was self-insured with Key Risk Management Services acting as the servicing agent.
5. Plaintiff suffered an accident on May 24, 1993 resulting in an electrical shock. The defendant-employer admitted that plaintiff suffered an electrical shock, but denied any resulting injury.
6. The issue to be determined by the Commission is whether plaintiff suffered a compensable injury by accident arising out of and in the course of the employment on May 24, 1993. Furthermore, plaintiff is seeking temporary total disability benefits from June 28, 1993 through August 16, 1993, medical expenses, and a permanent partial impairment rating to the arm and disfigurement to the face.
* * * * * * * * * * * * * *
Based upon all the competent credible evidence of record, the Full Commission makes the following additional
FINDINGS OF FACT
1. Plaintiff worked about nine (9) months as an Arnold machine operator before May 24, 1993. On that date, a switchbox short-circuited and the plaintiff received an electrical shock. According to defense witness, Junior Beck, the electrical lines were 660 volts/220 amps. Mr. Beck observed plaintiff on the floor with her eyes rolled back, trembling and appearing to be in serious medical difficulty.
2. The plaintiff was sent by ambulance to Catawba Memorial Hospital's Emergency room on May 24, 1993. On May 26, 1993, the plaintiff began seeing company doctor, Dr. Robert Hart. Dr. Hart, in his first note of May 26, 1993, observed "No question she has some right facial swelling along with some right facial nerve palsy. She has a slight droop of the right eye with an asymmetrical smile, early. No deviation of tongue. Neurological otherwise unremarkable. No sensation as far as touch is noted."
3. At the next visit of May 28, 1993, Dr. Robert Hart observed the plaintiff's jaw did not appear to be aligned and he observed facial muscle spasms. At the June 1, 1993 visit, Dr. Robert Hart noted that the plaintiff's jaw still appeared to be dislocated and difference in grip strength. At the June 7, 1993 visit, Dr. Hart observed the plaintiff appeared to have "a classic Bell's palsy" (apparently traumatic) and weakness of right arm. Referral to an oral surgeon, Dr. John Miller, failed to show a dislocated jaw, but Dr. Miller felt there was nerve damage causing the asymmetrical smile which Dr. Miller also observed, according to his notes. As of the last visits of June 16, 1993 and June 30, 1993, Dr. Robert Hart recommended exercises for the plaintiff's arm and psychiatric treatment for her facial condition.
4. The note of Dr. L. W. Boyles, a Hickory neurologist, indicate he felt the facial asymmetry might eventually resolve. Dr. Boyles (as well as apparently Dr. Hart) released the plaintiff for work with the restriction she be placed on some less hazardous job.
5. Dr. Richard Bey's July 1, 1993 note states "I agree this employee has some right facial and arm dysfunction on an improving course" — and this was despite some normal nerve tests.
6. Plaintiff saw Dr. Robert Lee on June 25, 1993. Dr. Lee's notes are consistent with the plaintiff's testimony. As of the last note on March 12, 1994, the plaintiff still had noticeable facial/smile asymmetry and right hand weakness from the electrical injury.
7. Dr. E. Brown Crosby found some compromise of neurological function despite some normal tests. That is the most likely (and reasonable) explanation for the loss of dominant arm muscle bulk (i.e. atrophy of right shoulder and deltoid), weakness in ring finger, loss of grip strength, and the observed facial droop. He felt she should not work with "hazardous equipment," and noted that she had some difficulty in her new employment keeping up when assigned to assembly line piece work. Dr. Crosby reviewed defendants' video tape and found no inconsistencies. Dr. Crosby rated the employee at thirty (30) percent disability of the right arm.
8. Plaintiff continued to suffer from a right facial droop as a result of the injury at the time of the hearing which may reasonably be expected to affect her ability to earn wages.
9. Plaintiff was also seen by Dr. William M. Pekman. In his deposition of October 10, 1994, Dr. Pekman found that plaintiff suffered no permanent partial impairment as a result of this injury by accident. Since Dr. Pekman's findings were inconsistent with the results of no permanent partial impairment, the undersigned gives more weight to the testimony of Dr. E. Brown Crosby. Therefore, the undersigned finds that plaintiff suffers a thirty (30) percent permanent partial impairment to her right arm.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following additional
CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out of and in the course of the employment when she was injured by electrical shock on May 24, 1993. N.C. Gen. Stat. § 97-2(6).
2. As a result of the injury by accident, plaintiff suffers a thirty (30) percent permanent partial impairment to the right arm. N.C. Gen. Stat. § 97-31(13).
3. As a result of the injury by accident, plaintiff suffers a disfigurement to the face. N.C. Gen. Stat. § 97-31(21).
4. Plaintiff is entitled to medical treatment for her injuries so long as such treatment effects a cure and gives relief to plaintiff as a result of her injury by accident. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendant shall pay compensation to plaintiff at the rate of $164.17 per week for seventy-two (72) weeks for the thirty (30) percent permanent partial impairment plaintiff suffered to the right arm. That compensation has accrued and shall be paid to plaintiff in a lump sum subject to the attorney's fee hereinafter approved.
2. Defendant shall pay compensation to plaintiff in the amount of $500.00 for the disfigurement plaintiff suffers to the face as a result of this injury by accident. This compensation has accrued and shall be paid to plaintiff in a lump sum subject to the attorney's fee hereinafter approved.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of this injury by accident when bills for same have been submitted to and approved by the Industrial Commission.
4. An attorney's fee in the amount of twenty-five (25) percent of the award is hereby approved for plaintiff's counsel. Said amount shall be deducted from the aforesaid award and pain directly to plaintiff's counsel.
5. Defendant shall pay the costs.
 S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________________ DOUGLAS E. BERGER DEPUTY COMMISSIONER
JRW/tmd 5/23/95;